[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Both parties appeared and were represented by counsel and proceeded on plaintiff's complaint dated August 18, 1994.
Having heard the evidence, the court finds as follows:
The plaintiff and defendant, whose maiden name was Woodside, intermarried at Cincinnati, Ohio, on January 20, 1979; that the plaintiff resided in the State of Connecticut for a period of twelve months next preceding the date of the filing of this complaint; that there are no minor children issue of the marriage; that the marriage has broken down irretrievably and that there is no hope of reconciliation.
This is defendant's second marriage and the plaintiff's first marriage. CT Page 8471
At the time of the marriage, plaintiff was a freshman student at the University of Cincinnati and the defendant was employed in the engineering library of said University. After the marriage, plaintiff moved into defendant's apartment. She supported him until he graduated from the University of Cincinnati in 1982 with a bachelor's degree in civil engineering.
After graduation the parties moved to Connecticut to allow plaintiff to become employed at General Dynamics in Groton, Connecticut. After looking for about one year, defendant became employed.
Defendant and plaintiff pursued obtaining master's degrees at the same time. Plaintiff was in school for seven years while defendant was in school for three years. While plaintiff was in school, defendant maintained the home.
Defendant received her master's degree in social work and paid for said degree from her own savings. Plaintiff received his master's degree in business administration. General Dynamics paid for plaintiff's education.
Shortly after moving to Connecticut, plaintiff instituted a divorce proceeding against the defendant but withdrew it in 1983. They started marriage counseling with Dr. David London, a psychiatrist, and continued for approximately two years when plaintiff stopped participating in the counseling. Defendant, however, has continued with the counseling to this date.
The plaintiff is unable to communicate with the defendant and failed to show affection for her. Defendant, whose first marriage was an abusive one, tried to make the marriage work. The plaintiff left the defendant in March 1994 after he had decided he did not want the marriage to continue.
The plaintiff, who is in excellent health and who is approximately 43 years of age has been employed at General Dynamics for approximately 13 1/2 years. He is employed as a nuclear test engineer and has a gross weekly income of $1,250 and a net weekly income of approximately $860 after deducting federal and state tax withholdings. CT Page 8472
During the marriage, plaintiff has managed to accumulate an SSIP savings of $92,418, IRA trust account of $22,295, an IRA Charter Oak FCU of $2,129, bank accounts of $5,571, and a 1989 Toyota valued at $2,000. In addition, plaintiff has a vested pension at General Dynamics which will pay him $717 per month at age 65, if he ceases employment with General Dynamics now, and $2,540 per month at 65, if plaintiff is employed by General Dynamics at that age. The plaintiff is without any significant debts.
The defendant, who is approximately 48 years of age, had been employed at Riverview Hospital in June 1994 dealing with an adolescent population. She failed to successfully complete her six-month probationary period and resigned when she was placed on an additional six-month probationary period, fearing she would be fired. She preferred to resign than to have her records indicate that she had been fired. Her annual salary was approximately $32,000. Presently, defendant is employed by Holden Temporaries, Inc., with a gross weekly income of $364 for a 48-hour work week. Her net weekly income is approximately $287. In addition, defendant receives a net amount of $29 from her retirement pension from the University of Cincinnati making her total net weekly income approximately $316.
The defendant has bank savings of $21,831, part of which represents an inheritance from the estates of her late parents and deferred compensation plans totalling $14,848. She also owns a 1993 Toyota valued at $12,000, but which has a loan balance of $6,000. She has no significant debts.
The parties jointly own the marital residence located at and known as 11 Fox Hill Road, Old Saybrook, Connecticut. Both parties agree that the property has a value of $120,000 and is subject to a first mortgage of approximately $41,142.
The down payment for the home was $25,000, of which plaintiff paid $5,000 by way of a promissory note and defendant paid $20,000 cash from savings she had accumulated from prior employment. Also, defendant paid the cost of the kitchen appliances from her savings. Each contributed one half of the cost of installing a new floor.
Defendant is not covered by any pension plan. She pays for her own medical with Cobra which has 20 more months CT Page 8473 coverage left. She pays $47 per week for Cobra coverage and $10 per week for dental coverage.
Plaintiff has been paying $299 per week for mortgage, taxes, electricity, defendant's cable TV expense, defendant's automobile insurance and taxes and the homeowner's insurance.
Because of plaintiff's education and occupation, he is found to be extremely employable. Although defendant has a master's degree in social work, she is suffering from recurrent major depression which makes her unemployable in her major vocation. However, after this situation has passed, she may recover her self esteem and self confidence and again become employable in her chosen field
The plaintiff is most at fault for the breakdown of this marriage. The defendant does not want the marriage to terminate but reluctantly agrees since plaintiff is persistent in his desire to have the marriage terminated. Accordingly, a decree dissolving the marriage of the parties is ordered. After considering the factors in Connecticut General Statutes § 46b-81
and § 46b-82, the following orders are entered which the court finds to be fair and equitable:
(1) The plaintiff is to pay the defendant the sum of $300 per week as periodic alimony for a term of five years or the death, remarriage or cohabitation by the defendant with an unrelated male whichever is the first to occur. If defendant survives said five-year period, the plaintiff shall pay to the defendant as periodic alimony $1 per year for an additional five-year period modifiable only upon a showing through medical, psychiatric or psychological testimony that the defendant is unable to pursue employment in her chosen vocation in social work.
(2) The plaintiff shall transfer to the defendant all his interest in the family residence located at and known as 11 Fox Hill Road, Old Saybrook, Connecticut, within sixty days of this decree. The defendant shall assume any mortgages on said property and hold the plaintiff harmless from any claims thereon. The defendant shall be responsible for any capital gain taxes due from a sale of the premises.
(3) There is assigned and vested in the defendant 60 percent of the present monthly value of the pension benefits of CT Page 8474 plaintiff's vested pension with General Dynamics Corporation, plaintiff's employer, by Qualified Domestic Relations Order (QDRO).
(4) There is assigned and vested in the defendant 50 percent of the value of plaintiff's 401K plan as of the date of this decree by QDRO.
(5) The court shall retain continuing jurisdiction over the QDROs until accomplished.
(6) The plaintiff shall pay the defendant $1,500 for her attorney's fees.
(7) The plaintiff shall keep his 1989 Toyota.
(8) The defendant shall keep her 1993 Toyota.
(9) The defendant's maiden name is restored to her.
Paul M. Vasington State Trial Referee